UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HOWARD J. HALL, **04-10413 PBS**

   Plaintiff,

v.   MAGISTRATE JUDGE Collings   Civil Action No. _____

OPENTV, INC., JAMES ACKERMAN
and PETER BOYLAN, III,

   Defendants.

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED N/A
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK F.O.M
DATE 3-1-04

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendants, OpenTV, Inc., James Ackerman and Peter Boylan, III ("Defendants"), through their undersigned counsel, hereby remove this civil action from the Superior Court Department of the Trial Court, Middlesex County, where it is now pending, to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and state as follows:

**FACTS**

1. Plaintiff, Howard J. Hall ("Plaintiff"), commenced this action by filing a Complaint and Jury Trial Demand ("Complaint") with the Superior Court on or about February 4, 2004. (A true and correct copy of the Complaint is attached hereto.)

2. Plaintiff served a copy of his Complaint on Defendants on or about February 9, 2004.

3. In this action, Plaintiff seeks damages arising from Defendants' alleged failure to pay him commissions and bonus compensation.

## GROUND FOR REMOVAL

4. This action is removable to this Court under 28 U.S.C. §§ 1332 and 1441 because Plaintiff and Defendants are citizens of different states.

5. Plaintiff is a citizen of the Commonwealth of Massachusetts, residing at 7 Charles Way, Chelmsford, Massachusetts. (Compl. ¶ 2.)

6. Defendant OpenTV, Inc. is a resident of the State of Delaware, where it was incorporated, and of the State of California, where it maintains its principal place of business at 275 Sacramento Street, San Francisco, California.  See 28 U.S.C. § 1332(c)(1).

7. Defendant James Ackerman is a resident of the State of California, residing at 1638 Lake Street, San Francisco, California. (Compl. ¶ 4.)

8. Defendant Peter Boylan, III is a resident of the State of Oklahoma, residing at 6600 Timberlane Road, Tulsa, Oklahoma. (Compl. ¶ 5.)

9. Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."

10. Under 28 U.S.C. § 1441(a), "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

11. Because Plaintiff and Defendant are citizens of different States and the matter in controversy exceeds $75,000 (see Compl. at ¶¶ 35-38), this action is removable to this Court under 28 U.S.C. § 1441(a).

## TIMELINESS AND NOTICE

12. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days of receipt by Defendants of a service copy of the Complaint setting forth the claims for relief upon which this action is based.

13. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of the filing of this Notice of Removal to Plaintiff, and will file a copy of this Notice with the Clerk of the Superior Court Department of the Trial Court, Middlesex County.

14. Pursuant to Local Civil Rule 81.1(a), within 30 days of this filing this Notice of Removal, Defendants shall file certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all docket entries in the state court.

WHEREFORE, notice is hereby given that this action is removed from the Superior Court Department of the Trial Court, Middlesex County, to the United States District Court for the District of Massachusetts.

Dated: March 1, 2004

                OPENTV INC., JAMES ACKERMAN and
                PETER BOYLAN, III

                By their attorneys,

                *[signature]*

                Andrew C. Pickett BBO# 549872
                Stephen T. Paterniti BBO# 564860
                JACKSON LEWIS LLP
                75 Park Plaza, 4th Floor
                Boston, Massachusetts 02116
                (617) 367-0025

OF COUNSEL:

Allan S. Bloom
Matthew I. Herman
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **Notice of Removal** by hand-delivery on all counsel of record on this 1st day of March, 2004.

_____

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
C.A. NO.

HOWARD J. HALL,

        Plaintiff,

v.

OPENTV, INC., JAMES ACKERMAN
and PETER BOYLAN, III,

        Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

### Nature of the Action

1. In this action, plaintiff seeks compensatory and punitive damages arising from defendants' failure to pay plaintiff commissions and bonus compensation in accordance with an employment agreement between plaintiff and OpenTV, Inc. ("OpenTV"). Plaintiff's claims against defendants are based upon breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel and violations of Mass. Gen. Laws c. 149, §148.

### Parties

2. Plaintiff Howard J. Hall ("Hall") is an individual residing at 7 Charles Way in Chelmsford, Massachusetts. Hall is 38 years old and provides the sole financial support for his wife and three children.

3. Defendant OpenTV is a corporation with a principal place of business at 275 Sacramento Street, San Francisco, California. At all pertinent times, OpenTV has been authorized to do business in the Commonwealth of Massachusetts and its office has been located at 55 Hayden Avenue, Lexington, Massachusetts. OpenTV is engaged in the business of selling software products and professional services for interactive television.

4. Defendant James Ackerman ("Ackerman") is an individual residing at 1638 Lake Street, San Francisco, California. At all relevant times, Ackerman was the Chief Executive Officer of OpenTV.

5. Defendant Peter Boylan, III ("Boylan") is an individual residing at 6600 Timberlane Road, Tulsa, Oklahoma. At all relevant times, Boylan was the Chairman of the Board of Directors and a key manager of OpenTV.

### Personal Jurisdiction

6. Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over OpenTV because it has acted directly or by its agents as to a cause of action in law or equity arising from its transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetss, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as OpenTV regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts, and by having an interest in, using or possessing real property in Massachusetts.

7. Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over Ackerman because he has acted directly or by his agents as to a cause of action in law or equity arising from his transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetss, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as Ackerman regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts. Upon information and belief, Ackerman has frequently made business calls to OpenTV's Massachusetts office.

8. Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over Boylan because he has acted directly or by his agents as to a cause of action in law or equity arising from his transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetts, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as Boylan regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts, and is the alter ego for OpenTV. Upon information and belief, Boylan has visited Massachusetts on business and was involved in several telephone conferences with OpenTV's Massachusetts office.

## General Allegations

### *Hall's Employment at OpenTV*

9. Hall began employment at OpenTV on February 5, 2001.

3

10. On February 12, 2001, in connection with his new employment, Hall signed OpenTV's "2001 Sales Incentive Plan Americas Sales Organization Agreement" ("2001 Plan"). A true and correct copy of the 2001 Plan is attached as Exhibit A.

11. Hall served as the Executive Sales Director for Spyglass Integration, a division of OpenTV, from February 5, 2001 to January 2002. As such, Hall was responsible for sales and business development for Spyglass Integration.

12. In January 2002, Hall was promoted to Vice President of Sales for Spyglass Integration. As such, Hall was responsible for sales and business development as well as supervision of the sales department.

13. On February 4, 2002, Hall signed "The 2002 Sales Incentive Plan Worldwide Sales Organization Master Plan Document" ("2002 Plan"). A true and correct copy of the 2002 Plan is attached as Exhibit B. The 2002 Plan was effective as of January 1, 2002.

14. In October 2002, Hall was promoted to Vice President of North American Sales for OpenTV. As Vice President of North American Sales, Hall was responsible for sales for OpenTV in North America.

15. Hall's compensation, as set by the 2002 Plan, consisted of several components, including: (1) base compensation of $150,000 per year; and (2) incentive compensation composed of commissions and bonuses. His commission was calculated based on a formula that was based on the percentage of the sales quota achieved. Hall was also to be paid a $2,500 individual bonus for every quarter that his sales quota was achieved and a $7,500 team bonus for every quarter that his sales team achieved its sales quota. *Exhibit B, Appendix A.* In addition, Hall was to be paid bonuses for signing large

contracts, ranging from $5,000 to $25,000, depending on the size of the contract. *Exhibit B, Appendix A.*

16. Starting in December 2002, Hall inquired about a new 2003 commission plan. Despite repeated inquiries from December 2002 through May 2003, Hall was not given a new 2003 commission plan.

17. On June 6, 2003 – six months after a new plan should have been issued – Hall was sent a proposed new 2003 commission plan. A true and correct copy of the June 6, 2003 e-mail is attached as Exhibit C.

18. The proposed 2003 commission plan was substantially different from the 2002 Plan and it significantly reduced the compensation due Hall. Although Hall informed OpenTV about his issues with the new plan, OpenTV refused to make the substantive changes Hall requested.

19. In September 2003, nine months after OpenTV was supposed to distribute it, the final 2003 Commission Plan ("2003 Plan") was officially published. A true and correct copy of the 2003 Plan is attached as Exhibit D.

20. Hall continued to demand payment for his work for 2003 under the 2002 Plan. However, OpenTV refused to pay him the amount due.

21. On October 16, 2003 – over three months after the second quarter ended – Hall received OpenTV's formal calculated commissions for his work in the first two quarters of 2003. These calculations were based on the 2003 Plan.

22. OpenTV refused to pay Hall any commissions until he signed the 2003 Plan. Hall refused to sign the 2003 Plan.

5

23. In an e-mail dated October 17, 2003, Hall informed OpenTV that it was "unreasonable for the company to propose a new plan six (6) months into the new year, take another 3 months to offer it's 'Final Version' and refuse to pay its employees under the terms of the existing contract." A true and correct copy of the October 17, 2003 e-mail is attached as Exhibit E.

24. On October 21, 2003, Hall submitted his resignation because OpenTV refused to honor its contractual obligation under the 2002 Plan. A true and correct copy of the resignation letter is attached as Exhibit F.

25. After resigning, Hall continued to communicate with OpenTV regarding the compensation due him in an effort to resolve the matter short of litigation. Hall was informed that OpenTV was looking into the matter.

### Hall's Filing of a Non-Payment of Wages Complaint with the Massachusetts Attorney General

26. Since no substantive reply was received from OpenTV, Hall filed a Non-Payment of Wages Complaint with the Massachusetts Attorney General on January 14, 2004. The transmittal letter requested an immediate "right to sue" letter from the Attorney General. A true and correct copy of the transmittal letter and Complaint are attached as Exhibit G.

27. On January 16, 2004, the Massachusetts Attorney General's office issued a "right to sue" letter. A true and correct copy of the letter is attached as Exhibit H.

### 2002 Plan Is Binding

28. The 2002 Plan was effective as of January 1, 2002. *Exhibit B, §1.1.*

29. According to the 2002 Plan, participants in the plan, such as Hall, were to be notified in writing of any changes. *Exhibit B, §§1.1, 1.3.*

6

30. It was the responsibility of OpenTV to provide a Sales Incentive Plan Description at the beginning of the plan year, i.e., the beginning of the calendar year. *Exhibit B, §2.1.*

31. OpenTV did not provide a new description until June 2003, <u>six months</u> after the date it should have been distributed, and even then, it was merely a <u>proposed</u> plan. The 2003 Plan was not officially published until September 2003 – <u>nine months</u> after it should have been distributed.

32. Under the 2002 Plan, Hall was to be paid "after the end of the applicable Measurement Period, i.e. each quarter." *Exhibit B, §§4.7, 7.3*. The first quarter ended March 31, 2003, the second quarter ended June 30, 2003, and the third quarter ended September 30, 2003. *Exhibit B, §2.2.*

33. Despite Hall's demands for payment, he was never paid for the incentive compensation due him for his work from January 2003 through October 21, 2003.

### Amounts Owed by Defendants

34. Due to the fact that Hall is not in possession of the hard figures required to make an accurate calculation of the incentive compensation due him, Hall estimates that defendants owe him the following amounts.

35. Hall estimates that defendants owe him $35,000 in bonus compensation. Pursuant to Appendix A of the 2002 Plan, Hall is entitled to bonus compensation of "$2,500 per quarter upon the successful achievement of quota as measured by the applicable quarterly plan or the YTD plan." *Exhibit B, Appendix A*. Thus, Hall is owed $7,500 for achieving his quota for the first three quarters of 2003. In addition, Hall is entitled to a team lead bonus of $7,500 per quarter upon "achieving the total" target

7

revenue each quarter. Since Hall's team achieved its quota for the first three quarters, he is owed $22,500. Lastly, Hall is also entitled, according to Appendix A, to a large contract bonus of $5,000 for closing a silver level sale in the first quarter. Thus, Hall is owed $35,000 in bonuses. $7,500 + $22,500 + $5,000 = $35,000.

36.  Hall estimates that he is owed approximately $191,001 in commission compensation. Pursuant to Appendix B of the 2002 Plan, Hall's commission compensation is calculated by multiplying the percentage of the quota achieved by the target commission and the rate factor set in the table. *Exhibit B, Appendix B*. Hall's target commission was $130,000 for the entire year. *Exhibit B, Appendix A*. Hall's commission quota for the year was $7,510,000. *Exhibit B, Appendix A*. Hall's target commission and commission quota were divided into four unequal quotas for the four quarters of the year. Thus, Hall's commission quota for the: (1) first quarter was $1.95 million; (2) second quarter: $1.97 million; (3) third quarter: $1.85 million; and (4) fourth quarter: $1.74 million. *Exhibit B, Appendix A*. Similarly, Hall's target commissions were: (1) first quarter: $33,735; (2) second quarter: $34,081; (3) third quarter: $32,005; and (4) fourth quarter: $30,102.

37.  Upon information and belief, Hall generated the following in sales from January 1, 2003 through October 21, 2003: (1) first quarter: $3,629,302; (2) second quarter: $3,144,195; (3) third quarter: $3,357,000; and (4) fourth quarter: $900,000. Thus, the percentages of quota achieved, which are equal to sales generated divided by the target quota, are: (1) first quarter: 186.1%; (2) second quarter: 159.6%; (3) third quarter: 181.5%; and (4) fourth quarter: 51.7%. By following the formula set in Appendix B for each quarter, Hall is due $215,558 in commissions. E.g. First quarter:

8

186.1% (% of quota achieved) x 115% (rate factor) x $33,735 (target commission) = $72,198; second quarter: 159.6% x 115% x $34,081 = $62,552; third quarter: 181.5% x 115% x $32,005 = $66,802; and fourth quarter: 51.7% x 90% x $30,102 = $14,006. Total commissions due: $72,198 + $62,552 + $66,802 + $14,006 = $215,558.

38. According to the 2002 Plan Hall is only entitled to 50% of his commission upon OpenTV's invoicing customers from Hall's accounts, and 50% when the money is received by OpenTV from the customer. Thus, Hall is owed $107,779 in commissions on revenue derived from his accounts. 50% x $215,558 = $107,779. In addition, upon information and belief, Hall is owed $83,222 in commissions for customers who have paid OpenTV on contracts he procured. Thus, upon information and belief, Hall is owed at least $191,001 in commissions. $107,779 + $83,222 = $191,001.

### Count I

### *Breach of Contract – OpenTV*

39. Hall realleges and incorporates by reference his allegations in paragraphs 1-38 above.

40. OpenTV has breached the 2002 Plan with Hall in numerous ways, including, without limitation, the following:

    a. Failure to pay bonus compensation;

    b. Failure to pay commissions; and

    c. Failure to provide a new incentive plan at the beginning of the 2003 calendar year.

41. At all relevant times Hall performed his obligations under the 2002 Plan.

9

42. As a result of OpenTV's breaches of contract, Hall has incurred damages in an amount to be determined at trial.

### Count II

*Breach of the Implied Covenant of Good Faith and Fair Dealing – OpenTV*

43. Hall realleges and incorporates by reference his allegations in paragraphs 1-42 above.

44. Good faith and fair dealing are implied in all contracts.

45. Neither party to a contract shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

46. As a result of OpenTV's breach of the covenant of good faith and fair dealing, Hall has incurred damages in an amount to be determined at trial.

### Count III

*Violation of Mass. Gen. Laws c. 149, §148 – OpenTV, Ackerman and Boylan*

47. Hall realleges and incorporates by reference his allegations in paragraphs 1-46 above.

48. At all relevant times, Hall was an "employee" within the meaning of Mass. Gen. Laws c. 149, §1.

49. At all relevant times, OpenTV was an "employer" within the meaning of Mass. Gen. Laws c. 149, §148.

50. At all relevant times, Ackerman and Boylan were "officers or agents having the management" of OpenTV and therefore are deemed to be "employers" within the meaning of Mass. Gen. Laws c. 149, §148.

51. OpenTV, Ackerman and Boylan failed to pay Hall incentive compensation in the form of bonuses and commissions as required by Mass. Gen. Laws c. 149, §148.

52. Hall has filed a complaint with the Attorney General of Massachusetts as required by Mass. Gen. Laws c. 149, §150 and has been provided a "right to sue" letter from the Attorney General. *Exhibits G and H.*

53. As a result of the violations of Mass. Gen. Laws c. 149, §148 by OpenTV, Ackerman and Boylan, Hall has incurred damages in an amount to be determined at trial.

### Count IV

*Unjust Enrichment – OpenTV*

54. Hall realleges and incorporates by reference his allegations in paragraphs 1-53 above.

55. Hall has provided services to OpenTV, but OpenTV has failed and refused to compensate Hall for such services.

56. OpenTV will be unjustly enriched if it is allowed to not compensate Hall for such services.

### Count V

*Promissory Estoppel – OpenTV*

57. Hall realleges and incorporates by reference his allegations in paragraphs 1-56 above.

58. OpenTV promised Hall that he would be paid commissions and bonuses for his work.

59. OpenTV reasonably should have expected that such promises would induce action or forbearance of a definite and substantial character on the part of Hall.

11

60. OpenTV's promises induced such action or forbearance.

61. Injustice can be avoided only by enforcement of OpenTV's promises.

62. As a result of OpenTV's failure to perform, Hall has suffered damages in an amount to be determined at trial.

### Relief

WHEREFORE, Hall prays that this Court:

1. Enter judgment against OpenTV on Count I and award Hall damages, interest and costs.

2. Enter judgment against OpenTV on Count II and award Hall damages, interest and costs.

3. Enter judgment against OpenTV, Ackerman and Boylan on Count III and award Hall treble damages, attorneys' fees, interest and costs.

4. Enter judgment against OpenTV on Count IV and award Hall damages, interest and costs.

5. Enter judgment against OpenTV on Count V and award Hall damages, interest and costs.

6. Any further relief that the Court deems just and proper.

## Jury Trial Demand

Plaintiff Howard J. Hall demands a trial by jury on all issues so triable.

HOWARD J. HALL

By his attorneys,

*[signature]*

Laurence H. Reece, III
BBO #414460
Judy S. Kawaf
BBO #648418
Reece & Associates, P.C.
One Bowdoin Square
Boston, Massachusetts 02114
(617) 747-7550

Dated: February 4, 2004.

13