UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOWARD J. HALL, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | C.A. No. 04-10413-PBS |
| ) | |
| OPENTV, INC., JAMES ACKERMAN ) | |
| PETER BOYLAND, III, and MARK ) | |
| MEAGHER ) | |
| ) | |
| Defendants ) | |

## PROPOSED AMENDED COMPLAINT

### Nature of the Action

1. In this action, plaintiff seeks compensatory and punitive damages arising from defendants' failure to pay plaintiff commissions and bonus compensation in accordance with an employment agreement between plaintiff and OpenTV, Inc. ("OpenTV"). Plaintiff's claims against defendants are based upon breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel and violations of Mass. Gen. Laws c. 149, §148.

### Parties

2. Plaintiff Howard J. Hall ("Hall") is an individual residing at 7 Charles Way in Chelmsford, Massachusetts. Hall is 38 years old and provides the sole financial support his wife and three children.

3. Defendant OpenTV is a corporation with a principal place of business at 275 Sacramento Street, San Francisco, California. At all pertinent times, OpenTV has been authorized to do

business in the Commonwealth of Massachusetts and its office has been located at 55 Hayden Avenue, Lexington, Massachusetts. OpenTV is engaged in the business of selling software products and professional services for interactive television.

4. Defendant James Ackerman ("Ackerman") is an individual residing at 1638 Lake Street, San Francisco, California. At all relevant times, Ackerman was the Chief Executive Officer of OpenTV.

5. Defendant Peter Boylan, III ("Boylan") is an individual residing at 6600 Timerlane Road, Tulsa, Oklahoma. At all relevant times, Boylan was the Chairman of the Board of Directors and a key manager of OpenTV.

6. Defendant Mark Meagher ("Meagher") is an individual employed by OpenTV as Senior Vice President - Finance and Administration.

**Personal Jurisdiction**

7. Pursuant to Mass. Gen. Laws. c. 223A, §3, this Court may exercise personal jurisdiction over OpenTV because it has acted directly or by its agents as to a cause of action in law or equity arising from its transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetts, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as OpenTV regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts, and by having an interest in, using or possessing real property in Massachusetts.

8. Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over Ackerman because he has acted directly or by his agents as to a cause of action in law or equity arising from his transacting business in Massachusetts, contracting to supply services or

things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetts, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as Ackerman regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts. Upon information and belief, Ackerman has frequently made business calls to OpenTV's Massachusetts office.

9.      Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over Boylan because he has acted directly or by his agents as to a cause of action in law or equity arising from his transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetts, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as Boylan regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts, and is the alter ego for OpenTV. Upon information and belief, Boylan has visited Massachusetts on business and was involved in several telephone conferences with OpenTV's Massachusetts office.

10.     Pursuant to Mass. Gen. Laws c. 223A, §3, this Court may exercise personal jurisdiction over Meagher because he has acted directly or by his agents as to a cause of action in law or equity arising from his transacting business in Massachusetts, contracting to supply services or things in Massachusetts, and/or causing tortious injury by an act or omission in Massachusetts, and/or causing tortious injury in Massachusetts by an act or omission outside Massachusetts as Meagher regularly does or solicits business or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in Massachusetts,

3

and is the alter ego for OpenTV. Upon information and belief, Meagher has visited Massachusetts on business and was involved in several telephone conferences with OpenTV's Massachusetts office.

## General Allegations

### Hall's Employment at OpenTV

11. Hall began employment at OpenTV on February 5, 2001.

12. On February 12, 2001, in connection with his new employment, Hall signed OpenTV's "2001 Sales Incentive Plan Americas Sales Organization Agreement" ("2001 Plan"). A true and correct copy of the 2001 Plan is attached as Exhibit A.

13. Hall served as the Executive Sales Director for Spyglass Integration, a division of OpenTV, from February 5, 2001 to January 2002. As such, Hall was responsible for sales and business development for Spyglass Integration.

14. In January 2002, Hall was promoted to Vice President of Sales for spyglass Integration. As such, Hall was responsible for sales and business development as well as supervision of the sales department.

15. On February 4, 2002, Hall signed "The 2002 Sales Incentive Plan Worldwide Sales Organization Master Plan Document" ("2002 Plan"). A true and correct copy of the 2002 Plan is attached as Exhibit B. The 2002 Plan was effective as of January 1, 2002.

16. In October 2002, Hall was promoted to Vice President of North American Sales for OpenTV. As Vice President of North American Sales, Hall was responsible for sales for OpenTV in North America.

17. Hall's compensation, as set by the 2002 Plan, consisted of several components, including: (1) base compensation of $150,000 per year; and (2) incentive compensation composed of

commissions and bonuses. His commission was calculated based on a formula that was based on the percentage of the sales quota achieved. Hall was also to be paid a $2,500 individual bonus for every quarter that his sales quota was achieved and a $7,500 team bonus for every quarter that his sales team achieved its sales quota. *Exhibit B, Appendix A*. In addition, Hall was to be paid bonuses for signing large contracts, ranging from $5,000 to $25,000, depending on the size of the contract. *Exhibit B, appendix A*.

18. Starting in December 2002, Hall inquired about a new 2003 commission plan. Despite repeated inquiries from December 2002 through May 2003, Hall was not given a new 2003 commission plan.

19. On June 6, 2003 – six months after a new plan should have been issued – Hall was sent a proposed new 2003 commission plan. A true and correct copy of the June 6 2003 e-mail is attached as Exhibit C.

20. The proposed 2003 commission plan was substantially different from the 2002 Plan and it significantly reduced the compensation due Hall. Although Hall informed OpenTV about his issues with the new plan, OpenTV refused to make the substantive changes Hall requested.

21. In September 2003, nine months after OpenTV was supposed to distribute it, the final 2003 Commission Plan ("2003 Plan") was officially published. A true and correct copy of the 2003 Plan is attached as Exhibit D.

22. Hall continued to demand payment for his work for 2003 under the 2002 Plan. However, OpenTV refused to pay him the amount due.

23. On October 16, 2003 – over three months after the second quarter ended – Hall received OpenTV's formal calculated commissions for his work in the first two quarters of 2003. These calculations were based on the 2003 Plan.

24.   OpenTV refused to pay Hall any commissions until he signed the 2003 Plan. Hall refused to sign the 2003 Plan.

25.   In an e-mail dated October 17, 2003, Hall informed OpenTV that it was "unreasonable for the company to propose a new plan six (6) months into the new year, take another 3 months to offer it's 'Final Version' and refuse to pay its employees under the terms of the existing contract." A true and correct copy of the October 17, 2003 e-mail is attached as Exhibit E.

26.   On October 21, 2003, Hall submitted his resignation because OpenTV refused to honor its contractual obligation under the 2002 Plan. A true and correct copy of the resignation letter is attached as Exhibit F.

27.   After resigning, Hall continued to communicate with OpenTV regarding the compensation due him in an effort to resolve the matter short of litigation. Hall was informed that OpenTV was looking into the matter.

### Hall's Filing of Non-Payment of Wages Complaint With the Massachusetts Attorney General

28.   Since no substantive reply was received from OpenTV, Hall filed a Non-Payment of Wages Complaint with the Massachusetts Attorney General on January 14, 2004. The transmittal letter requested an immediate "right to sue" letter from the Attorney General. A true and correct copy of the transmittal letter and Complaint are attached as Exhibit G.

29.   On January 16, 2004, the Massachusetts Attorney General's office issued a "right to sue" letter. A true and correct copy of the letter is attached as Exhibit H.

### 2002 Plan Is Binding

30.   The 2002 Plan was effective as of January 1, 2002. *Exhibit B, §1.1.*

31.   According to the 2002 Plan, participants in the plan, such as Hall, were to be notified in writing of any changes. *Exhibit B, §§1.1, 1.3.*

6

32.     It was the responsibility of OpenTV to provide a Sales Incentive Plan Description at the beginning of the plan year, i.e., the beginning of the calendar year. *Exhibit B, §2.1.*

33.     OpenTV did not provide a new description until June 2003, <u>six months</u> after the date it should have been distributed, and even then, it was merely a <u>proposed</u> plan. The 2003 Plan was not officially published until September 2003 – <u>nine months</u> after it should have been distributed.

34.     Under the 2002 Plan, Hall was to be paid "after the end of the applicable Measurement Period, i.e. each quarter." *Exhibit B, §§4.7, 7.3.* The first quarter ended March 31, 2003, the second quarter ended June 30, 2003, and the third quarter ended September 30, 2003. *Exhibit B, §2.2.*

35.     Despite Hall's demands for payment, he was never paid for the incentive compensation due him for his work from January 2003 through October 21, 2003.

## Amounts Owed by Defendants

36.     Due to the fact that Hall is not in possession of the hard figures required to make an accurate calculation of the incentive compensation due him, Hall estimates that defendants owe him the following amounts.

37.     Hall estimates that defendants owe him $35,000 in bonus compensation. Pursuant to Appendix A of the 2002 Plan, Hall is entitled to bonus compensation of "$2,500 per quarter upon the successful achievement of quota as measured by the applicable quarterly plan or the YTD plan." *Exhibit B, appendix A.* Thus, Hall is owed $7,500 for achieving his quota for the first three quarters of 2003. In addition, Hall is entitled to a team lead bonus of $7,500 per quarter upon "achieving the total" target revenue each quarter. Since Hall's team achieved its quota for the first three quarters, he is owed $22,500. Lastly, Hall is also entitled, according to Appendix

A, to a large contract bonus of $5,000 for closing a silver level sale in the first quarter. Thus, Hall is owed $35,000 in bonuses. $7,500 + $22,500 + $5,000 = $35,000.

38.     Hall estimates that he is owed approximately $191,001 in commission compensation. Pursuant to Appendix B of the 2002 Plan, Hall's commission compensation is calculated by multiplying the percentage of the quota achieved by the target commission and the rate factor set in the table. *Exhibit B, Appendix B*. Hall's target commission was $130,000 for the entire year. *Exhibit B, Appendix A*. Hall's commission quota for the year was $7,510,000. *Exhibit B, Appendix A*. Hall's target commission and commission quota were divided into four unequal quotas for the four quarters of the year. Thus, Hall's commission quota for the: (1) first quarter was $1.95 million; (2) second quarter: $1.97 million; (3) third quarter: $1.85 million; and (4) fourth quarter: $1.74 million. *Exhibit B, Appendix A*. Similarly, Hall's target commissions were: (1) first quarter: $33,735; (2) second quarter: $34,081; (3) third quarter: $32,005; and (4) fourth quarter: $30,102.

39.     Upon information and belief, Hall generated the following in sales from January 1, 2003 through October 21, 2003: (1) first quarter: $3,629,302; (2) second quarter: $3,144,195; (3) third quarter: $3,357,000; and (4) fourth quarter: $900,000. Thus, the percentages of quota achieved, which are equal to sales generated divided by the target quota, are: (1) first quarter: 186.1%; (2) second quarter: 159.6%; (3) third quarter: 181.5%; and (4) fourth quarter: 51.7%. By following the formula set in Appendix B for each quarter, Hall is due $215,558 in commissions. E.g. First quarter: 186.1% (% of quota achieved) x 115% (rate factor) x $33,735 (target commission) = $72,198; second quarter: 159.6% x 115% x $34,081 = $62,552; third quarter: 181.5% x 115% x $32,005 = $66,802; and fourth quarter: 51.7% x 90% x $30,102 - $14,006. Total commissions due: $72,198 + $62,552 + $66,802 + $14,006 = $215,558.

8

40.     According to the 2002 Plan, Hall is only entitled to 50% of his commission upon OpenTV's invoicing customers from Hall's accounts, and 50% when the money is received by OpenTV from the customer. Thus, Hall is owed $107,779 in commissions on revenue derived from his accounts. 50% x $215,558 = $107,779. In addition, upon information and belief, Hall is owed $83,222 in commissions for customers who have paid OpenTV on contracts he procured. Thus, upon information and belief, Hall is owed at least $191,001 in commissions. $107,779 + $83,222 = $191,001.

### The 2003 Plan

41.     Plaintiff has been a salesman for fifteen years.

42.     Based on his experience as a salesman, plaintiff avers that, in the absence of notice that compensation is to be reduced under a new plan, changes in incentive compensation plans are generally more favorable to salespersons than prior plans.

43.     As of December 2002, defendants Open TV and Ackerman knew that the 2003 plan would tie plaintiff's right to receive cash commissions to the annual company revenue.

44.     As of December 2002, defendants OpenTV and Ackerman knew that the 2003 plan gave the company the right to holdback a percentage of plaintiff's commissions until determination of the company's annual revenue was made sometime in 2004.

45.     As of December 2002, defendants OpenTV and Ackerman knew that the 2003 plan would differentiate new contracts from existing contracts, altering the formula by which commissions were calculated.

46.     As of December 2002, defendants OpenTV and Ackerman knew that the 2003 plan gave the company an option to pay fifty (50%) percent of the held back commissions in the form of stock options.

9

47. As of December 2002, defendants OpenTV and Ackerman knew that plaintiff would not receive the quarterly bonuses, team bonuses or large contract bonuses that were provided in its 2002 plan.

48. As of December 2002, defendants knew that plaintiff's compensation would be effected adversely in 2003 under the terms of the plan it intended to implement for 2003.

49. As early as February 2003, OpenTV and Ackerman knew that plaintiff was relying on the terms of his existing incentive plan for his compensation in 2003.

50. Between January and May 2003, plaintiff repeatedly asked OpenTV and Ackerman if changes would be made in his incentive plan.

51. At all times relevant hereto, defendants knew that they intended the 2003 plan to be retroactive to January 1, 2004.

52. Despite this knowledge, defendants failed to issue a proposed 2003 plan until June 6, 2004.

53. After June 6, 2003, plaintiff was led to believe that the proposed 2003 plan was subject to negotiation.

54. Subsequent to the issuance of the June 6, 2003 plan, plaintiff informed defendants OpenTV and Ackerman that he continued to rely on his 2002 plan for commissions earned in 2003.

55. Defendants failed to notify plaintiff that his reliance on the 2002 plan was misplaced until October 2003.

56. Defendants intentionally withheld information about the changes in the 2003 plan from plaintiff.

57. Plaintiff avers that defendants withheld this information in order to induce his continued employment with OpenTV.

58. Defendants knew or should have known that the withheld information was material to plaintiff's decision to continue in the employ of OpenTV.

59. Plaintiff did provide services to defendant from January 1 through October, 2003. As a result of his efforts, the company received more than $11,000,000.00 in revenue in 2003.

60. By the end of 2002, plaintiff was the only salesperson in the United States being compensated under the 2002 plan.

61. No other employee of OpenTV was similarly situated with respect to the terms of the 2003 plan.

## COUNT I

### *Breach of Contract – OpenTV*

62. Hall realleges and incorporates by reference his allegations in Paragraphs 1-61 above.

63. Plaintiff avers that his 2002 incentive compensation plan was extended for one year by the conduct of the parties and by his continued performance of his duties to the company.

64. OpenTV has breached the 2002 Plan with Hall in numerous ways, including, without limitation, the following:

    a. Failure to pay bonus compensation;

    b. Failure to pay commissions; and

    c. Failure to provide a new incentive plan at the beginning of the 2003 calendar year.

65. At all relevant times Hall performed his obligations under the 2002 Plan.

66. As a result of OpenTV's breaches of contract, Hall has incurred damages in an amount to be determined a trial.

## COUNT II

### *Breach of the Implied Covenant of Good Faith and Fair Dealing – OpenTV*

67. Hall realleges and incorporates by reference his allegations in Paragraphs 1-66 above.

68. Good faith and fair dealing are implied in all contracts.

69. Neither party to a contract shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

70. As a result of OpenTV's breach of the covenant of good faith and fair dealing, Hall has incurred damages in an amount to be determined at trial.

## COUNT III

### *Violation of Mass. Gen. Laws c. 149, §148 – Open TV, Ackerman and Boylan*

71. Hall realleges and incorporates by reference his allegations in Paragraphs 1-70 above.

72. At all relevant times, Hall was an "employee" within the meaning of Mass. Gen. Laws c. 149, §1.

73. At all relevant times, OpenTV was an "employer" within the meaning of Mass. Gen. Laws c. 149, §148.

74. At all relevant times, Ackerman and Boylan were "officers or agents having the management" of OpenTV and therefore are deemed to be "employers" within the meaning of Mass. Gen. Laws c. 149, §148.

75. OpenTV, Ackerman and Boylan failed to pay Hall incentive compensation in the form of bonuses and commissions as required by Mass. Gen. Laws c. 149, §148.

76. Hall has filed a complaint with the Attorney General of Massachusetts as required by Mass. Gen. Laws c. 149, §150 and has been provided a "right to sue" letter from the Attorney General. *Exhibits G and H.*

77. As a result of the violations of Mass. Gen. Laws c. 149, §148 by OpenTV, Ackerman and Boylan, Hall has incurred damages in an amount to be determined at trial.

## COUNT IV

### *Unjust Enrichment – OpenTV*

78. Hall realleges and incorporates by reference his allegations in Paragraphs 1-77 above.

79. Hall has provided services to OpenTV, but OpenTV has failed and refused to compensate Hall for such services.

80. OpenTV will be unjustly enriched if it is allowed to not compensate Hall for such services.

## COUNT V

### *Promissory Estoppel – Open TV*

81. Hall realleges and incorporates by reference his allegations in Paragraphs 1-80 above.

82. OpenTV promised Hall that he would be paid commissions and bonuses for his work.

83. OpenTV reasonably should have expected that such promises would induce action or forbearance of a definite and substantial character on the part of Hall.

84. OpenTV's promises induced such action or forbearance.

85. Injustice can be avoided only by enforcement of OpenTV's promises.

86. As a result of OpenTV's failure to perform, Hall has suffered damages in an amount to be determined at trial.

## COUNT VI

### *Quantum Meruit - OpenTV*

87.  Hall realleges and incorporates by reference his allegations in Paragraphs 1 through 86.

88.  Defendants failed to give plaintiff notice that the 2002 plan was invalid until October 2003.

89.  As a result of defendants' actions, plaintiff worked in good faith and continued to perform the services for which he had been retained, securing sales contracts for the benefit of his employer.

90.  Defendants accepted plaintiff's continued services.

91.  Defendant OpenTV knew that plaintiff expected to be paid under his existing compensation plan.

92.  Plaintiff expected to be compensated for his services under his existing compensation plan.

93.  Plaintiff has suffered damages because Defendant OpenTV has not paid him the commissions and bonuses to which he was entitled

## COUNT VII

### *Deceit – Open-TV, Ackerman, Boylan and Meagher*

94  Hall realleges and incorporates by reference his allegations in Paragraphs 1 through 93.

95. As of December 2002, Defendant Meagher knew that OpenTV planned to make the changes to Hall's incentive compensation plan as described heretofore in this complaint.

96. As of February 2003, Defendant Meagher knew that Hall was relying on his 2002 plan for his 2003 incentive compensation. Despite repeated requests from Hall about changes to his compensation plan, Meagher never told Hall that the changes to the plan were already incorporated into a new plan that would govern Hall's 2003 compensation.

97. In or about December 2002, Defendant Ackerman advised plaintiff that there would be a new incentive compensation plan in 2003.

98. Defendant Ackerman told plaintiff that the new plan would tie commissions to corporate revenue. Ackerman did not tell Hall about any of the other changes that were incorporated into a new plan that would govern Hall's 2003 compensation.

99. Between January 2003 and October 31, 2003, Defendants OpenTV, Ackerman and Meagher intentionally withheld the material information about changes to plaintiff's existing incentive compensation plan.

100. By their actions, Defendants OpenTV, Ackerman and Meagher caused plaintiff to believe that if changes were made to his plan they would not be significantly different from his existing plan.

101. Defendants' actions were designed to induce plaintiff to continue to provide services to defendant OpenTV.

102. Plaintiff continued to provide services in reliance on the material misrepresentations and/or omissions made by the defendants.

103. Plaintiff relied on his existing compensation plan for his 2003 compensation.

104. Defendants knew that plaintiff expected to be paid for his services on the same, or nearly the same bases as his 2002 plan.

105. Defendants accepted the benefits of plaintiff's services.

106. Had plaintiff been informed of the changes known to OpenTV, he would not have remained in the employ of OpenTV.

107. Defendants knew that plaintiff would not continue his employment with OpenTV if the withheld information were provided to him.

108. Defendant OpenTV has failed to pay any incentive payments due to plaintiff for his services in 2003.

109. As of December 2002, Defendant Boylan knew that OpenTV planned to make the changes to Hall's incentive compensation plan as described heretofore in this complaint.

110. Plaintiff suffered damages as a result of defendants' material misrepresentations and/or withholding of material information by defendants.

### RELIEF

WHEREFORE, Hall prays that this Court:

1. Enter judgment against OpenTV on Count I and award Hall damages, interest, costs and attorney's fees.

2. Enter judgment against OpenTV on Count II and award Hall damages, interest and costs.

3. Enter judgments jointly and severally against OpenTV, Ackerman and Boylan on Count III and award Hall treble damages, attorneys' fees, interest and costs.

4. Enter judgment Against OpenTV on Count IV and award Hall damages, interest and costs.

5.  Enter judgment against OpenTV on Count V and award Hall damages, interest and costs.

6.  Enter judgment against OpenTV on Count VI and award Hall damages, interest and costs.

7.  Enter Judgment jointly and severally against OpenTV, Ackerman, Boylan and Meagher on Count VII and award Hall compensatory and consequential damages, interest and costs.

8.  Any further relief that the Court deems just and proper.

### Jury Trial Demand

Plaintiff Howard J. Hall demands a trial by jury on all issues so triable.

PLAINTIFF

By his Attorneys,

Frederic N. Halström – BBO 218420
Halström Law Offices, P.C.
P.O. Box 121203 Lafayette Station
132 Boylston Street
Boston, MA 02112
617/262-1060

Nance Lyons – BBO #309740
132 Boylston Street
Boston, MA 02116
617/ 262-1060

October 7, 2004

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on _____

17